UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MICHELLE J., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br><br> Case No. 2:21-cv-00172 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Michelle J.[1] filed this action asking the court to reverse the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385. (Opening Br., Doc. No. 18.) Ms. J. asks the court to remand the case to the Commissioner for a calculation of benefits or, alternatively, to remand for further administrative proceedings, including a *de novo* hearing. The Administrative Law Judge ("ALJ") denied Ms. J.'s application, finding she did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 18–32, Doc. No. 14.) The court[2] has carefully

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by her first name and last initial only.

[2] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 10.)

1

reviewed the record and the parties' briefs.[3]  Because the ALJ did not legally err and his opinion is supported by substantial evidence, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner.  This court reviews the ALJ's decision and the whole record to determine if substantial evidence supports the ALJ's factual findings and if the ALJ applied the correct legal standards.  42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).  The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).  Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."  *Id.* at 1154 (internal quotation marks omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

---

[3] The appeal will be determined on the written memoranda, as oral argument is unnecessary. DUCivR 7-1(g).

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A). Under the Social Security Act, an individual is considered disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ uses a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant is engaged in substantial gainful activity;
2) The claimant has a severe medically determinable physical or mental impairment;
3) The impairment is equivalent to one of the impairments which precludes substantial gainful activity, listed in the appendix of the relevant disability regulation;
4) The claimant has a residual functional capacity to perform past relevant work; and
5) The claimant has a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing the disability. *Ray v. Bowen*, 865 F.2d 222, 224

(10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

## PROCEDURAL HISTORY

Ms. J. applied for disability insurance benefits on February 5, 2018 and supplemental security income benefits on February 4, 2018, alleging disability beginning on October 31, 2017. (Tr. 208, 210.) On December 19, 2019, after a hearing, the ALJ found Ms. J. was not disabled. (*Id.* at 18–32.)

At the first step of the five-step sequential evaluation, the ALJ found Ms. J. had not engaged in substantial gainful activity since October 31, 2017. (*Id.* at 20.) At step two, the ALJ found Ms. J. had the severe impairments of bipolar I disorder with psychotic features, schizoaffective disorder, anxiety disorder, obsessive-compulsive disorder, and intermittent explosive disorder. (*Id.* at 21.) He also found Ms. J. had other, nonsevere impairments, including bilateral patellofemoral chondrosis and headaches. (*Id.*) At step three, the ALJ found Ms. J.'s impairments did not meet or equal an impairment listing. (*Id.* at 22.) The ALJ determined Ms. J. had the residual functional capacity ("RFC")[4] to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [She] can perform goal-oriented, but not assembly line-paced work. [She] can occasionally interact with co-workers and supervisors and can have brief and superficial interaction with the general public. [She] can adapt to routine changes in the work place.

(*Id.* at 25.) Based on this RFC and the testimony of a vocational expert, the ALJ concluded at step four that Ms. J. could not perform any past relevant work. (*Id.* at 30.) However, at step five, the ALJ found jobs existed in significant numbers in the national economy which Ms. J.

---

[4] An individual's RFC is the most the individual can do considering his/her/their limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

could perform considering her age, education, work experience, and RFC—including floor cleaner, hand launderer, and laundry sorter. (*Id.* at 31–32.) Therefore, the ALJ found Ms. J. was not disabled. (*Id.* at 32.)

The Appeals Council denied Ms. J.'s request for review, (*id.* at 1–4), making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Ms. J. raises three claims of error. She argues the ALJ failed to support the RFC finding with substantial evidence because (1) he erroneously rejected the opinions of Dr. David Paulson and Dr. Randal Pennington, (2) he selectively cited to evidence supporting the RFC while ignoring and failing to discuss evidence detracting from the RFC, and (3) he improperly evaluated Ms. J.'s subjective symptoms. (*See generally* Opening Br., Doc. No. 18.) Ms. J. contends that if Dr. Paulson's and Dr. Pennington's opinions had been evaluated properly, and if the ALJ had considered the record as a whole, the evidence would have shown Ms. J. is disabled and has impairments equivalent to those in listings 12,04, 12.06, or 12.08. (*Id.* at 15.)

1. Medical Opinions of Dr. Paulson and Dr. Pennington

The Social Security Administration implemented new regulations for evaluating medical evidence for cases filed on or after March 27, 2017, like Ms. J.'s. *See Revisions to Rules Regarding the Evaluation of Med. Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132 (Mar. 27, 2017)); 20 C.F.R. §§ 404.1520c(b), 416.920c(b). Under the new regulations, the ALJ does not weigh medical opinions or "defer or give any specific evidentiary weight, including controlling weight," to them. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ assesses the persuasiveness of the opinions based on: (1) supportability (the extent to which the opinion is supported by underlying medical evidence and

explanations), (2) the consistency of the opinion with other medical and non-medical sources, (3) the relationship with the claimant (including the length, frequency, purpose and extent of the relationship, and whether it was an examining relationship), (4) any specialization, and (5) any other relevant factors. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The most important factors are supportability and consistency—the ALJ is required to explain how she evaluated those two factors.[5] *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

These new regulations do not "alter the Tenth Circuit's requirement that an ALJ must explain her rejection of any medical source opinions in the record concerning the claimant's RFC." *Gonzales v. Kijakazi*, No. 20-914, 2022 U.S. Dist. LEXIS 1778, at *30 (D.N.M. Jan. 5, 2022) (unpublished); *see also Desiree T. v. Kijakazi*, No. 20-1330, 2022 U.S. Dist. LEXIS 35468, at *12 (D.N.M. Mar. 1, 2022) (unpublished) ("[T]here is no reason to think the regulations altered settled principles of administrative law pertaining to how ALJs review evidence."). Put differently, if an ALJ "assigns an RFC that contradicts a medical source opinion, the ALJ must explain why she did not account for the medical opinion in her RFC determination." *Gonzales* 2022 U.S. Dist. LEXIS 1778, at *26. This requirement stems in part from the premise that an ALJ must discuss any "significantly probative evidence [she] rejects." *Id.* at *30 (alteration in original) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)).

Ms. J. argues the ALJ improperly rejected the opinions of Dr. Paulson and Dr. Pennington for reasons unsupported by the record. (Opening Br. 8–9, Doc. No. 18.) The

---

[5] In most cases, an ALJ is not required to articulate how she considered the remaining factors. She must do so only where she finds two different medical opinions regarding the same issue are consistent with the record and equally well-supported. 20 C.F.R. §§ 404.1520c(b)(2)–(3); 416.920c(b)(2)–(3).

6

Commissioner disagrees, arguing the ALJ properly evaluated the medical opinions pursuant to the new regulations. (Answer Br. 10–12, Doc. No. 24.)

### A. Dr. Paulson

Ms. J. argues the ALJ erred in finding Dr. Paulson's opinions as to the nature and severity of her limitations unpersuasive. Ms. J. specifically contends the ALJ erred by finding: (1) Dr. Paulson's opinions were unsupported by his own records and inconsistent with Dr. Timo Hoggard's records, (2) the record does not show Ms. J. sought additional therapy or counseling, and her medications managed her conditions, and (3) Dr. Paulson's opinions were unpersuasive because he used a check-box form. (Opening Br. 9, Doc. No. 18; Reply 2, Doc. No. 25.)

First, Ms. J. criticizes the ALJ for highlighting inconsistencies between Dr. Paulson's opinions and Dr. Hoggard's records. Ms. J. argues this comparison is improper because Dr. Hoggard treated Ms. J. for physical issues, but Dr. Paulson treated her for mental conditions. (*See* Opening Br. 9, Doc. No. 18.) Because of this, Ms. J. claims Dr. Hoggard's findings should not detract from Dr. Paulson's opinions. (*Id.*)

The ALJ's focus on the inconsistencies between Dr. Paulson's and Dr. Hoggard's opinions was not erroneous. Although Dr. Paulson found moderate limitations in mental functioning, the ALJ noted Dr. Hoggard "consistently found normal mood, appropriate affect, intact insight and judgment, and no acute distress." (Tr. 29 (citing *id.* at 496, 519, 521).) And, as noted, the ALJ must consider each provider's area of specialty, such as Dr. Hoggard's physical-health focus, but need not articulate this consideration in the decision. *See* 20 C.F.R. § 404.1520c(b)(2), (c)(4), § 416.920c(b)2), (c)4). The ALJ did not err by finding Dr. Paulson's opinions unpersuasive in part because of their inconsistencies with Dr. Hoggard's opinions. (*See* Tr. 29.)

Relatedly, it was not erroneous for the ALJ to find Dr. Paulson's opinions unsupported by his own records. (*Id.* at 29.) The ALJ had a duty to assess and articulate the supportability of Dr. Paulson's opinions. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). In doing so, the ALJ noted that, like Dr. Hoggard, Dr. Paulson "consistently found adequate grooming and eye contact, a cooperative but tense attitude, normal speech, alert sensorium, depressed mood, restricted affect with some tearfulness, linear and logical thought[] process, no gross cognitive deficits, and no hallucinations or delusions." (Tr. 29 (citing *id.* at 441–51; 526–67; 593–606; 607–11); *see also id.* at 444, 531, 533, 596, 610.) This statement is supported by record evidence. Further, the ALJ did not pick and choose evidence supporting his finding of unpersuasiveness. As noted, the ALJ addressed Dr. Paulson's finding that Ms. J. had a "depressed mood [and] restricted affect with some tearfulness," (*id.* at 29), along with his finding that Ms. J. was depressed and anxious with a restricted affect, (*id.* at 26, 29), and Ms. J.'s testimony that she had auditory hallucinations twice a week, (*id.* at 26). This shows the ALJ considered contradictory evidence. *See Chater*, 79 F.3d at 1009–10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."); *Steinbook v. Kijakazi*, No. 1:20-cv-00534, 2022 U.S. Dist. LEXIS 3633, at *25 (D.N.M. Jan. 6, 2022) (unpublished) (noting there is no requirement that an ALJ discuss each piece of controverted evidence).

Next, Ms. J. argues the ALJ erred by discounting Dr. Paulson's opinions on the grounds that Ms. J. sought no additional therapy or treatment and her medications had some efficacy. (Opening Br. 9, Doc. No. 18; *see also* Tr. 29.) Ms. J. claims this finding as to her treatment is erroneous because she received additional treatment from Dr. Randal Pennington. (Opening Br. 9, Doc. No. 18.) But the ALJ accounted for Ms. J.'s contact with Dr. Pennington. Specifically,

8

he noted Ms. J. "had an initial evaluation with Dr. Pennington, but the record does not contain any subsequent treatment records and [Ms. J.] was discharged in May 2019, as she had dropped out of services." (Tr. 28 (citing *id.* at 592).) He also observed that in August 2018, Ms. J. "began a course of treatment and medication management with Randal Pennington." (*Id.* at 27 (citing *id.* at 464).) And the ALJ referred to the fact that Ms. J. failed to complete her treatment with Dr. Pennington, instead, leaving "against professional advice." (*Id.* at 27 (citing *id.* at 592).) In other words, the ALJ accounted for Ms. J.'s treatment with Dr. Pennington—but recognized the record evidence showed she failed to follow through with that treatment and ultimately dropped out of it. *Cf. Jones v. Kijakazi*, No. CIV-21-1086, 2022 U.S. Dist. LEXIS 104022, at *14 (W.D. Okla. June 10, 2022) (unpublished) (noting "lack of medical treatment is fair game" when evaluating a medical source opinion). Ms. J. has not established this finding is unsupported by the record or that the ALJ erred in his approach.

Ms. J. also suggests the ALJ erred in finding Dr. Paulson's opinions were not well supported because Dr. Paulson generally maintained Ms. J.'s medication regimen, which suggested some treatment efficacy. (*See* Tr. 29 (citing *id.* at 544, 560, 593–603, 607–11).) Ms. J. argues this constitutes a mischaracterization of the evidence because the medications kept her conditions from worsening, but did not improve her symptoms to the point of allowing her to work. (Opening Br. 9–10, Doc. No. 18.) In support of this claim, Ms. J. points to Dr. Paulson's notes indicating the medications interfered with her concentration, focus, and ability to work.[6] (*Id.* at 10 (citing Tr. 346, 349, 399).) Ms. J. also contends that despite her medications, she continued to struggle—and she did worse on lower doses. (*Id.*) Record evidence supports the

---

[6] It is legitimate for an ALJ to discount a doctor's opinion that a claimant cannot work, as that is ultimate decision which is reserved for the Commissioner. *See Garcia v. Saul*, 509 F. Supp. 3d 1306, 1312 (D.N.M. 2020).

9

ALJ's findings. Ms. J. does not dispute that Dr. Paulson maintained largely the same medication regimen for her. While the medications may not have cured her conditions, this consistency of treatment—along with the worsening of her condition with decreased doses—suggests the medications were at least somewhat efficacious. Accordingly, the ALJ's conclusion about the efficacy of Ms. J.'s treatment is sufficiently supported by the record evidence.

Finally, Ms. J. contends the ALJ erred in finding Dr. Paulson's opinions unpersuasive because he completed a check-box form with no explanation for the suggested limitations— except that Ms. J.'s medication caused fatigue, she was easily irritated, and did not read social cues well. (*See* Tr. 29.) Relying on *Simmons v. Colvin*, 635 F. App'x 512, 515 (10th Cir. 2015) (unpublished), Ms. J. argues the use of check-box forms is proper where the limitations are also explained on the forms or in associated reports. (Reply 2, Doc. No. 25.) It is true that an ALJ's categorical rejection of check-box forms is inappropriate where there is other record evidence which "could lend support to the conclusions in the forms."[7] *Andersen v. Astrue*, 319 F. App'x 712, 724 (10th Cir. 2009) (unpublished). But an ALJ may include the fact that a medical provider used a check-box form in his analysis, so long as the ALJ does not categorically reject the doctor's opinion solely on that basis. *See A.G. v. Comm'r, Soc. Sec. Admin.*, No. 21-cv-00439, 2022 U.S. Dist. LEXIS 133582, at *22–25 (D. Colo. July 27, 2022) (unpublished). Here, the ALJ did not categorically reject Dr. Paulson's opinions because they were on check-box form; he listed it as one of numerous reasons Dr. Paulson's opinions were unpersuasive. The ALJ's analysis of Dr. Paulson's opinions is supported by the evidence and is not legally erroneous.

---

[7] The revisions to the regulations do not change the analysis regarding check-box forms. *Trujillo v. Kijakazi*, No. 1:21-cv-00774, 2022 U.S. Dist. LEXIS 156747, at *17 n.11 (D.N.M. Aug. 30, 2022) (unpublished).

10

### B. Dr. Pennington

Next, Ms. J. argues the ALJ improperly rejected the opinions of Dr. Pennington. (Opening Br. 12, Doc. No. 18.) Ms. J. does not explain how the ALJ erred in his analysis of Dr. Pennington's opinions, other than to say the ALJ cited "the exact same reasons for discounting Dr. Paulson's opinions which are illogical." (*Id.*) It is impossible to address such a broad and nonspecific argument. But there is no indication the ALJ erred in his assessment of Dr. Pennington's opinions, or that his findings are unsupported by the record.

Ms. J. also accuses the ALJ of "play[ing] doctor" by discounting the opinions of Ms. J.'s treating physicians and substituting his own interpretation of the record. (*Id.*) But Ms. J. has not established the ALJ's interpretations are unsupported by substantial evidence. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). The record establishes the ALJ weighed the evidence and assessed the persuasiveness of medical opinions based on proper factors—all of which he was tasked to do. *See Langley*, 373 F.3d at 1118; 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

2. <u>RFC Assessment</u>

Next, Ms. J. claims the ALJ's RFC evaluation is unsupported by substantial evidence. (Opening Br. 8, Doc. No. 18.) Specifically, Ms. J. argues the finding that she can occasionally interact with coworkers and supervisors and can briefly interact with the public, is unsupported by substantial evidence. (*Id.* at 11.) She also contends nothing in the record supports the finding that she can adapt to routine changes in the workplace. (*Id.* at 13.) Finally, Ms. J. argues the RFC fails to account for her moderate limitations in concentration, persistence, and pace—as reflected in the state agency psychological consultants' opinions (which the ALJ found

11

persuasive). (*Id.* at 12.) The Commissioner argues the ALJ's RFC findings were supported by the record and consistent with those of the agency psychological consultants, Dr. John Gill and Dr. Charles Raps. (Answer Br. 12–13 & n.6, Doc. No. 24.)

The court reviews the ALJ's RFC assessment to determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax*, 489 F.3d at 1084; *Glenn*, 21 F.3d at 984. But "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Instead, "[t]he determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities." *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished).

In this case, the ALJ found Ms. J. was able to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [She] can perform goal-oriented, but not assembly line-paced work. [She] can occasionally interact with co-workers and supervisors and can have brief and superficial interaction with the general public. [She] can adapt to routine changes in the work place.

(Tr. 25.) This RFC finding is consistent with Dr. Gill's and Dr. Raps' opinions—and with the record as a whole.

### A. Interaction with Coworkers, Supervisors, and the Public

Ms. J. argues the portion of the RFC restricting her to occasional interaction with coworkers and supervisors and brief, superficial interaction with the public is unsupported by substantial evidence. (Opening Br. 11, Doc. No. 18.) But she relies primarily on Dr. Paulson's opinions, which the ALJ found unpersuasive. (*See* Tr. 29.) Specifically, Ms. J. argues Dr.

12

Paulson reported Ms. J. had difficulty being around other people (suffering increased irritability, anger, and frustration), (Opening Br. 11, Doc. No. 18 (citing Tr. 346, 347, 348, 407, 446, 528, 529, 595)), and found she was extremely limited in her ability to work with others, (*id.* (citing Tr. 453–55, 574–76)). Ms. J. also notes she had difficulty working due to her inability to interact with others, and she was never in a romantic relationship. (*Id.* (citing Tr. 346).)

The ALJ accounted for these claims and based the RFC restrictions related to interactions with others on substantial evidence. As an initial matter, where the ALJ properly found Dr. Paulson's opinions unpersuasive, he had no obligation to incorporate Dr. Paulson's suggested limitations into the RFC. *See Teresa B. v. Comm'r of Soc. Sec.*, No. 2:20-cv-01197, 2021 U.S. Dist. LEXIS 180232, at *12 (W.D. Wash. Sep. 21, 2021) (unpublished) ("[A]n ALJ does not err by excluding from the RFC[,] limitations from medical evidence or symptom testimony that he or she properly discounted."). Further, the ALJ considered the evidence which Ms. J. contends supports a more restrictive RFC. The ALJ acknowledged Ms. J.'s claims that she had difficulty being around others, disliked conversation and being touched, isolated herself, and avoided social functions. (Tr. 25, 26.) And he took note of her testimony that she had "trouble accepting criticism and would frequently call in sick because she was angry or irritated." (*Id.* at 26.) But the ALJ also relied on Ms. J.'s report that she was never fired or laid off from a job because of problems interacting with others, but had been discharged due to her medical conditions. (*See id.* at 23, 25, 26 (citing *id.* at 261).) Ms. J.'s argument fails where the ALJ considered the evidence Ms. J. believes supports a more restrictive RFC; he simply weighed it differently.

13

Ms. J. also argues the ALJ failed to incorporate into the RFC the limitations from Dr. Gill and Dr. Raps regarding Ms. J.'s inability to interact.[8] (Opening Br. 12, Doc. No. 18.) Ms. J. claims this is error, where the ALJ found Dr. Gill's and Dr. Raps' opinions persuasive. (*Id.*) Her argument fails because the ALJ did account for these opinions. Dr. Gill and Dr. Raps opined Ms. J. could work in a low-stress environment with reduced social interaction. (Tr. 71–72, 105.) Ms. J. has not shown how the ALJ's conclusion (that Ms. J. could only occasionally interact with coworkers and briefly interact with the public in a superficial manner) is insufficient to account for these limitations. The restrictions the ALJ included regarding Ms. J.'s ability to interact with others is supported by substantial evidence.

### B. *Adapting to Routine Changes in the Workplace*

Next, Ms. J. argues nothing in the record supports the finding that she can adapt to routine changes in the workplace. (Opening Br. 13, Doc. No. 18.) But the ALJ supported this determination by noting Ms. J. went on a trip to visit family in Texas despite experiencing some anxiety about being out of her routine. (Tr. 26 (citing Tr. 411).) The ALJ also observed Ms. J.'s ability to attend church and her attempt to interact there suggested an ability to adapt to change. (Tr. 24 (citing Tr. 609).) Ms. J. may not agree with the ALJ's findings about her ability to adapt, but he based them on substantial evidence in the record.

### C. *Concentration, Persistence, and Pace*

Ms. J. also contends the ALJ failed to explain how the RFC findings account for Dr. Gill's and Dr. Raps' opinions as to her moderate limitations in concentration, persistence, and pace. (Opening Br. 12, Doc. No. 18.) According to Ms. J., this constitutes error because the

---

[8] Notably, Ms. J.'s entire argument as to the ALJ's assessment of Dr. Gill's and Dr. Raps' opinions amounts to only two sentences. (*See* Opening Br. 12, Doc. No. 18.)

ALJ found Dr. Gill's and Dr. Raps' opinions persuasive. (*Id.*) But Ms. J. has not shown the RFC restrictions are inadequate to account for the limitations in Dr. Gill's and Dr. Raps' opinions.

Dr. Gill and Dr. Raps both opined Ms. J. was moderately limited in her ability to complete a normal workday or week at a consistent pace without unreasonable breaks. (Tr. 87, 104.) However, in his narrative, Dr. Gill explained he found no evidence of any sustained period where Ms. J. would have been unable to work in a lower-stress environment. (*Id.* at 85.) Dr. Gill found Ms. J. was unrestricted in her ability to understand and apply information and could work in a "reasonably nonconfrontational" setting. (*Id.* at 72, 85.) Similarly, in his narrative, Dr. Raps explained Ms. J.'s thoughts were linear and logical, and she suffered no "gross cognitive deficits." (*Id.* at 105.) He opined she could work with "reduced social exposure," "reduced stress," and "relaxed time and production standards." (*Id.*) Put differently, although the state agency psychological consultants opined Ms. J. had moderate limitations in concentrating, persisting, or maintaining pace, they explained she could still perform simple to semi-complex tasks with relaxed time and production standards. (*See id.* at 29–30 (citing *id.* at 71–72, 84–85, 100–02, 116–18); *see also id.* at 74, 86–87.) The RFC assessment accounts for these limitations by restricting Ms. J. to "goal-oriented, but not assembly line-paced work." (*Id.* at 25.)

Notably, despite her criticism of the ALJ's RFC findings, Ms. B. has not identified any additional limitations which should have been included as a restriction or functional limitation. *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (unpublished) (upholding RFC assessment where the claimant did not identify additional limitations which should have been

included, supported by the record). The ALJ's RFC findings are supported by substantial evidence.

3. <u>Subjective Symptoms</u>

Lastly, Ms. J. argues the ALJ improperly evaluated her subjective symptoms, downplaying their severity when the record showed otherwise. (Opening Br. 11, 13, Doc. No. 18; Reply 2, Doc. No. 25.) The Commissioner disputes this, arguing the ALJ properly considered Ms. J.'s daily activities and other record evidence, and supported his determination with substantial evidence. (Answer Br. 8–10, Doc. No. 24.)

ALJs evaluate subjective symptoms using a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." Soc. Sec. Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4, at *3; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c). In doing so, the ALJ must "examine the entire case record." SSR 16-3p, 2016 SSR LEXIS 4, at *9–10; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ will consider factors such as: the claimant's daily activities; the duration, frequency, and intensity of symptoms; medication taken and whether it alleviates the symptoms; other treatment or measures used to relieve the symptoms; and other relevant factors. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ also considers whether there are inconsistencies between the claimant's statements and the record or inconsistencies in the evidence. *Id.* §§ 404.1529(c)(4); 416.929(c)(4).

16

In this case, the ALJ properly evaluated Ms. J.'s subjective symptoms. The ALJ acknowledged Ms. J.'s claims of concentration and memory problems, difficulty interacting with and being around others, avoiding social functions, discontinuing hobbies, needing to wear gloves and engage in ritualistic behaviors, and suffering from high anxiety, stress, and regular auditory hallucinations. (Tr. 25–26.) The ALJ found Ms. J.'s medically determinable impairments could reasonably be expected to cause these symptoms. (*Id.* at 27.) But he found Ms. J.'s statements regarding the intensity, persistence, and limiting effects of the symptoms "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

Ms. J. claims the ALJ erred in analyzing her subjective symptoms and improperly evaluated her daily activities. (*See* Reply 2, Doc. No. 25.) But this is not the case. The ALJ concluded the record evidence was "inconsistent with [Ms. J.'s] allegations about the debilitating nature of her impairments." (Tr. 26.) Specifically, the ALJ considered Ms. J.'s treatment, finding her condition remained relatively stable and her medication regimen had not changed substantially. (*Id.* at 27–28.) The ALJ also cited to treatment records reflecting consistently adequate grooming, normal speech, alertness, linear and logical thought processes, no significant cognitive deficits, and no hallucinations or delusions. (*See id.* at 28 (citing *id.* at 441–51, 526–67, 593–606, 607–11).) The ALJ then referred to other, similar, medical notes, indicating Ms. J. consistently had a normal mood, appropriate affect, intact insight and judgment, and no acute distress. (*Id.* (citing *id.* at 496, 519, 521).) And the ALJ considered the fact that Ms. J. failed to follow through with treatment, dropping out "against professional advice." (*Id.* at 27, 28.) These are all proper considerations supporting the ALJ's finding regarding the intensity, persistence, and limiting effects of Ms. J.'s subjective symptoms.

17

The ALJ also reviewed Ms. J.'s subjective symptoms in light of her daily activities. Ms. J. contends the ALJ relied on random activities irrelevant to her ability to work. (Opening Br. 13, Doc. No. 18.) But the ALJ properly analyzed Ms. J.'s daily activities to assess her subjective symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). In particular, the ALJ relied on Ms. J.'s ability to generally care for her own personal needs, including her ability to prepare simple meals, complete chores (on good days), drive, leave home alone, and shop. (Tr. 28 (citing *id.* at 256–58).) The ALJ also noted Ms. J. regularly interacts with her family, attends church, exercises, plays games—and she took a vacation to visit family. (*Id.* (citing *id.* at 256, 259, 411, 440, 479).)

An ALJ "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer" from a subjective symptom. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *see also Wilson v. Saul*, No. 18-99, 2019 U.S. Dist. LEXIS 163330, at *8 (W.D. Okla. Sep. 23, 2019) (unpublished) ("[A] claimant's activities of daily living do not, by themselves, determine the claimant's ability to work, as sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." (internal quotation marks omitted)). But in this case, Ms. J.'s daily activities were consistent and significant enough to support the ALJ's finding that her impairments were not as debilitating as she claimed. *Cf. Wilson*, 2019 U.S. Dist. LEXIS 163330, at *8 ("Plaintiff's own characterization of her activities shows that they were far from 'sporadic.'"). And the ALJ relied on more than daily activities; as detailed above, the ALJ also considered a broad swath of medical records. These records provide more than a scintilla of evidence supporting the ALJ's findings that Ms. J.'s limitations were not as severe as she claimed. For these reasons, the ALJ did not err in his assessment of Ms. J.'s subjective symptoms.

## CONCLUSION

Where the ALJ properly analyzed the medical opinions, supported the RFC determination with substantial evidence, and properly considered Ms. J.'s subjective symptoms, his decision is not contrary to legal standards and it is otherwise supported by substantial evidence. The court AFFIRMS the Commissioner's decision.

DATED this 29th day of September, 2022.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge